IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ANTHONY MILLER, ) | |
|     Plaintiff, ) | |
| v. ) | Case No. 19 CV 50004 |
| ) | |
| VILLAGE OF KIRKLAND, an Illinois municipal ) | |
| corporation; RYAN BLOCK, individually and in his ) | |
| official capacity; and, ADAM DAVENPORT, ) | |
| individually and in his official capacity. ) | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

NOW COME Defendants, the VILLAGE OF KIRKLAND (the "Village"), RYAN BLOCK ("Block") and ADAM DAVENPORT ("Davenport"), by and through their attorney, K. Austin Zimmer, of Del Galdo Law Group, LLC., and for their Motion to Dismiss Plaintiff's Amended Complaint, state as follows:

**Introduction**

Plaintiff ANTHONY MILLER ("Miller") filed his initial complaint in this case on January 3, 2019, and an amended version on February 17, 2019, generally claiming he was unlawfully forced to resign from the Village's police department. See [Dkts. 1, 5]. His Amended Complaint ("Complaint") purports to bring: a First Amendment retaliation claim (Count I); a due process claim (Count II); and, an unidentified state law claim which Defendants understand to comprise constructive discharge (Count III) against Block and Davenport; and, *respondeat superior* (Count IV) and indemnification (Count V) claims against the Village. *Compl.*

But each of Miller's claims must fail as pled because of gaps in the Complaint's structure: Miller does not identify protected speech on a matter of public concern to support a First Amendment claim; he bases his due process claim on alleged violations of the Uniform Peace Officer's Disciplinary Act ("UPODA"; 50 ILCS 725/1, *et seq.*) without identifying a civil remedy

created by that act; and, he does not name his actual employer to support a retaliatory discharge claim. Deprived of a viable underlying claim, Miller's derivative claims against the Village also fail.

For these reasons, as further described below, Defendants respectfully request dismissal of Miller's Complaint, in its entirety.

## Standard of Review

A motion to dismiss brought pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint. *AnchorBan, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy this standard, the allegations must do more than raise a speculative right to relief. *Twombly*, at 555-56. As such, the presumption of truth as to facts alleged and reasonable inferences therefrom does not pertain to conclusory allegations that recite the elements of a claim. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, at 662.

## Argument

A. <u>Miller's First Amendment claim does not identify speech on a matter of public concern</u>.

To establish a claim for retaliation in violation of the First Amendment, a public employee must first prove that his speech is constitutionally protected. *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). Second, the plaintiff must establish that the speech was a motivating factor in a retaliatory action (prior to the defendant's opportunity to otherwise justify its actions at evidentiary phases of proceedings). See *Hutchins v. Clarke*, 661 F.3d 947 (7th Cir. 2011).

A public employee's speech is constitutionally protected only if it (1) was made as a private citizen, and (2) addressed a matter of public concern. *Forgue*, at 966. Defendants challenge Miller's pleading on both fronts, and further contend that the Complaint does not establish a retaliatory act.

A brief summation is helpful: Miller's Count I narrative focuses on an alleged investigation in November 2017 into sexual harassment allegations against Davenport in relation to another officer. See *Compl.* ¶ 14. Miller pleads that he provided information "during the investigation." *Id.*, at ¶ 15. Also, he alleges that he "supported other members of the Department who were willing to provide evidence." *Id.*, at ¶ 17. And he contends he was thereafter accused of misconduct at a meeting with Block, Davenport and an attorney, two (2) months later. *Id.*, at ¶¶ 18, 20. Allegedly fearing termination, Miller then resigned under protest. *Id.*, at ¶¶ 22, 24.

Though Miller attempts to characterize his involvement in opposition to Davenport as motivated by "his concern as a citizen about the character and fitness of the newly appointed Chief of Police" (*Id.*, at ¶ 16), his pleading makes clear that whatever his motivation, his speech was first part of an ongoing investigation and then aimed at influencing its outcome. Far from a mere private grievance, Miller was marshalling support for a preferred resolution in an internal review of the governmental department for which he worked.

"[O]rdinary matters of internal operation" are not of public concern in the Seventh Circuit. See *Schad v. Jones*, 415 F.3d 671, 674 (7th Cir. 2005), citing *Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004). Indeed, even a topic of public importance does not automatically mean an employee's statements address a matter of public concern as that term is employed by federal courts. See, e.g. *Kokkinis v. Ivkovich*, 185 F.3d 840 (7th Cir. 1999); see also *Cliff v. Bd. of Sch. Comm'rs of City of Indianpolis*, 42 F.3d 403 (7th Cir. 1994).

Instead, speech exercised by a public employee in the course of his employment will rarely fit the mold of private speech by a citizen. See, e.g. *Gonzalez v. City of Chicago*, 239 F.3d 939, 941 (7th Cir. 2001) ("Gonzalez may well have been motivated in part as a good citizen when he accepted the employment duties of reporting police misconduct. Nevertheless, he was clearly acting entirely in an employment capacity when he made those reports."). Since "a police officer's duty to report official

misconduct is a basic part of the job," his speech in this case should not prove an exception. Cf. *Roake v. Forest Pres. Dist. of Cook Cty.*, 849 F.3d 342, 346 (7th Cir. 2017); see also *Davis v. City of Chicago*, 889 F.3d 842, 846 (7th Cir. 2018) ("good intentions alone do not grant First Amendment protection to speech by public employees"). Miller's speech, by his own explanation, consisted of testimony as a sworn law enforcement witness and encouragement of peers' participation in the same, so his Complaint does not identify protected speech upon which to base his action.

Even assuming Miller had identified protected speech, his Complaint fails to allege a retaliatory act. The Complaint describes a meeting with Block, Davenport, and an attorney where Miller alleges being accused of "misconduct" without identifying its nature/seriousness or who among the three (3) others present at the meeting leveled such accusations, and describes leaving his job before an anticipated retaliatory firing could occur. Ample case law expresses doubt that such circumstances constitute an actionable event. See, e.g. *Silk v. City of Chicago*, 194 F.3d 788, 802 (7th Cir. 1999) ("no … action resulted") and *Debs v. Northeastern Illinois University*, 153 F.3d 390, 396 (7th Cir. 1998) (courts are not "super-personnel department[s]").

The result is a failure to meet the pleading standards for a First Amendment retaliation claim: That the named defendants actually in fact retaliated for speech as a citizen on a matter of public concern. Miller's Count I should therefore be dismissed.

B. Miller's constructive discharge claim does not name his employer.

Miller's unspecified state law claim is similarly deficient in that it focuses on an alleged constructive discharge without actually naming his employer as a defendant. A plaintiff's former employer is the only proper defendant in a retaliatory discharge action under Illinois law, and therefore a plaintiff may not bring such a claim against the employee or agent of a former employer who effected the discharge on the employer's behalf. See *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12 (1998). Miller does not name the Village in Count II. That alone is dispositive.

Yet, even if Miller could abstractly proceed with his state law claim as currently drafted, he also goes well beyond the limits of reasonable inference in offering a story about his arrest of Block – with no timeline whatsoever – followed by Block's election, termination of a prior police chief, hiring of Davenport, and then the calling of a meeting to question Miller several additional months after Davenport's hiring. See generally Compl., ¶¶ 14-17, 20-22. In this Circuit, "sufficient passage of time may destroy an inference of causation." *Andrekus v. Bd. of Educ. of Dist. U-46*, 2004 WL 2535274 (N.D. Ill. Sept. 28, 2004) (Mag. J. Ashman), at *8. Where the Court does not know how long a period of time passed between Block's alleged arrest and his January 2018 meeting with Miller, the temporal link between the two does not rise to the level of plausibility.

This is all the more true given that retaliatory discharge is a narrowly defined tort under Illinois law. See *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill.2d 526 (1988). Constructive discharge in Illinois occurs only when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced to resign involuntarily. *Steele v. Illinois Human Rights Com'n*, 160 Ill.App.3d 577, 581 (3d Dist. 1987). An employee who quits without giving an employer a reasonable chance to work out a problem has not been constructively discharged. *Grube v. Lau Industries, Inc.*, 257 F.3d 723 (7th Cir. 2001); see also *Cigan v. Chippewa Falls School Dist.*, 388 F.3d 331, 333-334 (7th Cir. 2004). Here, the result is that the Defendants are entitled to dismissal of Count II.

C. <u>Miller's due process claim stems from an act that does not create its own civil remedy</u>.

Meanwhile, Miller's due process claim turns on the assumption that the meeting described in his Complaint did not follow the mandates of UPODA, thus creating liability. Specifically, Miller incorporates his Counts I-II by reference, and adds only that Block and Davenport's alleged "failure to provide Miller the procedural rights afforded to him by … UPODA violated … the Illinois Constitution," leading to his "constructive discharge." Compl., ¶¶ 29-30.

But UPODA provides prophylactic protections rather than creating its own cause of action. See 50 ILCS 725/3.10 ("Admissions or confessions obtained … may not be used in any subsequent disciplinary proceeding."). And Miller's resignation itself was what prevented him from availing himself of potential procedural defenses.

Frankly, Miller's description of the meeting in his Complaint may not even qualify to invoke UPODA's oversight. Under UPODA, "interrogation" is a defined term which contemplates "formal investigation," not merely a conversation in the absence of any charges seeking discharge, removal, or even suspension. See *Kidwell v. Eisenhauer*, 679 F.3d 957, 969 (7th Cir. 2012). The definition excludes questioning which is part of an informal inquiry or relates to minor infractions – and again, Miller's Complaint does not specify the nature of the "misconduct" he was purportedly asked about. *Id.* cf. *Compl.* ¶ 20[1].

But for the sake of completeness, if UPODA was in any way an attempt to codify federal constitutional protections under Illinois law, there are four elements to a federal due process claim: (1) a person acting under color of state law; and (2) a deprivation (3) of constitutionally protected property (4) without due process of law. *McAdoo v. Lane*, 564 F.Supp. 1215, 1221 (N.D. Ill. May 13, 1983) (Hon. J. Marshall), citing *Parratt v. Taylor*, 451 U.S. 527 (1981). Miller does not expressly plead that Brock and Davenport acted under color of state law in requiring his presence at the meeting described in his Complaint and does not allege that an actual deprivation (as opposed to a communication Miller interpreted as a threat) occurred. Miller therefore has not pled a viable due process claim and Count III should be dismissed.

---

[1] To the contrary, Miller's Complaint does not even admit that the alleged accusations, if true, would have been misconduct, instead labeling the conversation as involving questions about incidents "characterized" as misconduct. *Compl.* ¶ 20.

D. <u>Lacking viable underlying claims, Counts IV and V must also be dismissed</u>.

Lastly, since Miller's *respondeat superior* and indemnification claims rest on the sufficiency of Counts II and III, to the full extent that the same are dismissed, Counts IV and V as pled against the Village should be dismissed as well.

## Conclusion

Plaintiff in this case offers a tempting story about an elected official and superior officer supposedly combining to block his career. Notwithstanding his narrative, Plaintiff resigned before any action was taken against him, retaliatory, constructive or otherwise, and voluntarily chose not to avail himself of any procedural protections to which he might have otherwise been entitled. That does not make for a successful set of claims, and Defendants are entitled to dismissal.

WHEREFORE, Defendants respectfully request this Honorable Court dismiss Plaintiff's Amended Complaint, and in so doing further order any and all such relief as is just and proper.

                                                                             Respectfully submitted,
                                                                             The VILLAGE OF KIRKLAND, RYAN BLOCK, and ADAM DAVENPORT

By:     /s/ *K. Austin Zimmer*
            One of their attorneys

K. Austin Zimmer (#6276227)
Timothy A.M. Woerner
DEL GALDO LAW GROUP, LLC.
1441 S. Harlem Avenue
Berwyn, Illinois 60402
(708) 222.7000 (t) | (708) 222.7001 (f)
zimmer@dlglawgroup.com