IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ANTHONY MILLER, ) | |
|         Plaintiff, ) | |
| vs. ) | |
| ) | Case No. 2019 CV 50004 |
| ) | |
| VILLAGE OF KIRKLAND, an Illinois municipal ) | |
| corporation; RYAN BLOCK, individually and ) | |
| in his official capacity; and ) | |
| ADAM DAVENPORT, individually and in his ) | |
| official capacity, ) | |
|         Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

NOW COMES the Plaintiff, ANTHONY MILLER, by and through his attorney, DANIEL J. McGRAIL and for his Response to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, states as follows:

### Introduction

Defendants' motion should be denied because it does not correctly apply the standard of review for Federal Rule of Civil Procedure 12(b)(6) motions and the applicable case law on First Amendment state law retaliation claims. In particular, the motion ignores certain key facts properly alleged in the Second Amended Complaint while drawing inappropriate inferences from the facts they address. In any event, when viewing the facts alleged in the Second Amended Complaint as true while allowing for reasonable inferences in Plaintiff's favor, it becomes abundantly clear that there are viable claims of both First Amendment and state law retaliation.

### First Amendment Claim – Count I

Miller has clearly alleged sufficient facts to support a First Amendment retaliation claim. The Second Amended Complaint alleges that he "…appeared before the individuals investigating DAVENPORT'S conduct and provided information corroborating other evidence that DAVENPORT engaged in an inappropriate

relationship with a female auxiliary officer while they were on duty." *Sec. Am. Compl.,* Ct. I, ¶17. He further alleges that his motivation for reporting the incriminating information was "…his concern as a citizen about the character and fitness of the newly appointed Chief of Police and its negative ramifications on the department." *Sec. Am. Compl.,* Ct. I, ¶16. Equally important from a First Amendment perspective, Miller "did not have any role in the investigation in his capacity as an officer nor was that a part of his normal duties and responsibilities." *Sec. Am. Compl.,* Ct. I, ¶15. These allegations clearly demonstrate that Miller meets the elements of a First Amendment claim in that he was acting as a private citizen and addressing a matter of public concern for purposes of invoking First Amendment protection. *Garetti v. Ceballos,* 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L.Ed 2d 689 (2006).

Defendants' reliance on *Gonzalez v. City of Chicago,* 239 F.3d 939, 941, (7th Cir. 2001) is therefore misplaced. First, Gonzalez's situation is strikingly different than Miller's. The question before the Court in Gonzalez was "…whether a public employee receives First Amendment protection for producing writings that may address matters of public concern, but are also a routine requirement of the job." *Gonzalez v. City of Chicago,* 239 F.3d 939, 941, (7th Cir. 2001). In Gonzalez, the Court pointed out that the reports that Gonzalez wrote as an employee of the City of Chicago Office of Public Concern Standards did not have First Amendment protection because they were created in the scope of his "ordinary" job responsibilities. *Id.* To the contrary, Miller reported a matter of public concern that was not part of his normal duties and responsibilities on the police department. *Sec. Am. Compl.,* Ct. I, ¶15. In fact, he had no official role in this investigation into the Chief's inappropriate conduct at issue. *Sec. Am. Compl.,* Ct. I, ¶15.

The Seventh Circuit addressed this particular distinction in *Delgado v. Jones,* 282 F.3d 511 (7th Cir. 2002). In Delgado, the Court considered a report by a police officer (Delgado) wherein he stated that there was evidence that a relative of a public official frequented a drug house and that the chief of police was a close personal friend of that public official. *Delgado,* 282 F.3d at 513-15. Delgado sued for First Amendment retaliation when the chief of police transferred him to a less desirable assignment in

retaliation for his report. *Id.* at 515. The Seventh Circuit distinguished the case from *Gonzalez,* noting that while Delgado's job required that he report information about suspected crimes, he went further by including in his report "*additional facts"* that called into question "the department's ability to conduct an objective investigation." *Id.* at 519 (emphasis added). The Court specifically pointed out that unlike Gonzalez, Delgado went beyond his normal job responsibilities by acting as a concerned citizen in disclosing information relevant to whether the police chief could perform his job effectively under the circumstances. Miller, like Delgado, went beyond his normal job responsibilities by acting as a concerned citizen in disclosing information relevant to whether the police chief could perform his job effectively in light of serious misconduct involving a female subordinate officer while they were on duty.

Lastly, Defendants' contentions that Miller's participation in the investigation "was aimed at influencing its outcome" and that he was "marshalling support for a preferred resolution" have no merit. First, they are impermissible inferences from the allegations in the Second Amended Complaint. Miller clearly alleges he provided this information due to his concern about the Chief's fitness to serve in light of the misconduct disclosed. Moreover, such an inference would not defeat an otherwise viable First Amendment claim. Whether a matter is of public concern depends on content, form and context. *Belk v. Town of Minocqua,* 858 F.2d. 1258, 1264 (7th Cir.1988). A statement is of public concern when it relates to a matter of political, social or other concern to the community, rather than merely a personal grievance of interest only to the employee. *Gustafson v. Jones,* 290 F.3d 895, 907 (7th Cir. 2002). Thus, a speaker's motive "may play some part in determining whether the speech is of public concern because speech that promotes a purely private interest is not protected." *Marshall v. Porter County Plan Comm'n,* 32 F.3d 1215, 119 (7th Cir. 1994); *Colburn v. Trs. of Indiana Univ.,* 973 F.2d 581, 586-87 (7th Cir. 1992). Motive, however, is not assessed in a vacuum. Courts recognize that people often speak out for personal reasons and that speech may be of public concern even where the speaker stands to gain a personal benefit in addition to bringing the wrongdoing to light. *Belk,* 858 F.2d at 1264*; Auriemma v. Rice,* 910 F.2d 1449, 1460 (7th Cir. 1990).

Second Amended Complaint cannot be interpreted under any analysis to allege a purely private interest. To the contrary, the allegations depict a matter of public concern related to the misconduct of a public official while on duty. Even if one assumed for the sake of argument that the pleadings could be interpreted to suggest Miller stood to somehow gain from reporting the Chief's misconduct, it would have no effect on its status as a matter of public concern based on the above cited case law.

Next, Defendants' argument that Count I does not "identify any retaliation" is also baseless. Defendants claim that Miller fails to allege a retaliatory act. *Defendants' Brief,* P.5 ¶3. They support their contention by stating that "there was no indication a termination was otherwise imminent…" *Id.* This claim simply ignores several well plead facts which establish an obvious retaliatory act as well as retaliatory animus. Less than two (2) months after providing evidence of Chief Davenport's inappropriate conduct, Miller was abruptly ordered into a meeting with President Block, Chief Davenport and their Attorney wherein he was accused of misconduct. *Sec. Am. Compl.,* Count I, ¶¶19 and 21. In addition, he did not receive any prior notice other than a text message shortly beforehand indicating the meeting was related to "employee conduct". He was essentially ambushed in violation of his rights guaranteed by Sections 3.1 through 3.11 of *50 ILCS 725.1* (UPODA) prior to or during said meeting. *Sec. Am. Compl.,* Ct. I, ¶26.

Then, despite Miller's denials of any wrongdoing, a lack of credible evidence supporting the allegations against him, and no previous discipline whatsoever in twelve (12) years of service on the department, he was told he had the option of resigning in lieu of being terminated. *Sec. Am. Compl.,* Ct. I, ¶¶24 and 25. It is difficult to understand how Defendants could suggest termination was not imminent based on these facts especially when required to draw all reasonable inferences in Miller's favor. He was told by his employer that he is facing termination in light of the allegations of misconduct and offered the option of resignation. There is no other way to interpret such a direct threat. It is also important to note that the direct threat of termination was conveyed by an attorney in the presence of both the Chief of Police and Village President.

**State Claim – Count II**

The allegations in the Second Amended Complaint demonstrate that Block had no opportunity to retaliate against Miller for the DUI arrest until he became Village President in April of 2017. *Sec. Am. Compl.,* Ct. II, ¶12. However, once elected, the animus toward Miller became apparent. Within the first two (2) weeks of his administration, he appointed Davenport to Chief of Police although he had only one year of experience as a full-time police officer. *Sec. Am. Compl.,* Ct. II, ¶20. In doing so, he did not consider Miller for the position of Chief of Police even though he was far more qualified in every respect, with twelve (12) years of excellent service with Kirkland as a full-time police officer. *Sec. Am. Compl.,* Ct. II, ¶21.

However, evidence of retaliatory animus toward Miller did not end there. From May 2017 through January 3, 2018, Block impeded the promotion of Miller to Sergeant despite his qualifications, relevant certifications and success performing the duties of the position. *Sec. Am. Compl.,* Ct. II, ¶22. On the heels of bypassing Miller as a candidate for Chief and blocking him from a promotion to Sergeant, Block, the Village President, chooses to attend the January 3, 2018 meeting involving allegations of misconduct by Miller.

In the presence of the Village President and Chief of Police, their attorney accuses Miller of engaging in various acts of misconduct and given the option to resign in lieu of being terminated. This sequence of events demonstrates that there are no unexplained gaps in time that would make the alleged retaliatory acts remote. To the contrary, the Second Amended Complaint clearly shows that Block was upset with Miller for having arrested him for driving under the influence (DUI) in light of how close he was to his home. *Sec. Am. Compl.*, Ct. II, ¶16. There was no opportunity for retaliation until Block became President of the Village that employed Miller. *Sec. Am. Compl.,* Ct. II, ¶18. However, conduct revealing retaliatory animus toward Miller began almost immediately after Block took office which was his first opportunity to do so. Such animus continued through the overt threat of termination that led to Miller's resignation in an effort to preserve his employment record. *Sec. Am. Compl.,* Ct. II, ¶27. Consequently, the Second

Amended Complaint clearly alleges a sequence of events that gives rise to a claim of retaliation based on Miller's act of arresting Block and thereby carrying out a clear mandate of public policy, i.e., enforcement of the state criminal code.

## CONCLUSION

Miller has more than sufficiently alleged he reported a matter of public concern in a manner that was not related to his ordinary police functions. In addition, he has alleged a sequence of events that clearly shows a retaliatory act that was motivated by both his reporting the Chief's misconduct and arresting the Village President for driving under the influence. Therefore, Defendants' Motion to Dismiss both the state and federal claims in the Second Amended Complaint should be denied in their entirety for the reasons stated above.

ANTHONY MILLER, Plaintiff,

By:/s/ Daniel J. McGrail
　　DANIEL J. McGRAIL, His Attorney

DANIEL J. McGRAIL, #6192600
Attorney at Law
4707 Perry Ridge Lane, Suite 200
Loves Park, IL 61111
(815) 961-8770
mcgraillaw@sbcglobal.net

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies under penalties of perjury as provided by law pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, that he caused a copy of the foregoing Plaintiff's Response to Defendants' Motion to Dismiss to be filed and served through the Court's CM/ECF Electronic Filing System and associated e-mail system upon all counsel of record on August 6, 2019.

      /s/ Daniel J. McGrail
      Daniel J. McGrail