IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ANTHONY MILLER, )<br>    Plaintiff, )<br>v. )<br>)<br>VILLAGE OF KIRKLAND, an Illinois municipal )<br>corporation; RYAN BLOCK, individually and in his )<br>official capacity; and, ADAM DAVENPORT, )<br>individually and in his official capacity, )<br>    Defendants. ) | Case No. 19 CV 50004 |

## **DEFENDANT'S REPLY IN SUPPORT OF DISMISSAL**

NOW COME Defendants, the VILLAGE OF KIRKLAND ("Village"), RYAN BLOCK ("Block") and ADAM DAVENPORT ("Davenport"), by and through their attorney, K. Austin Zimmer, of Del Galdo Law Group, LLC., and replying in support of their Motion to Dismiss ("Motion") Plaintiff ANTHONY MILLER ("Miller")'s Second Amended Complaint[1], state as follows:

### **Introduction**

This case involves Miller's claims of retaliation by the Village and its officials for a 2012 arrest of Block (Count II) and for Miller's contribution to a 2018 investigation of Davenport (Count I). Because Miller's claims involve attenuated events in time and/or speech of private concern, and because Miller's resignation preceded any actual retaliatory act, Defendants moved to dismiss.

Responding, Miller suggests that Defendants resort to *Gonzalez v. City of Chicago*, 239 F.3d 939 (7th Cir. 2001) with respect to First Amendment law is misplaced and contends that "direct threat" of termination sufficed to create a constructive discharge under state law. But Miller's attempts to distinguish *Gonzalez* are unavailing, and Miller's selective invocation of the Uniform Police Officer's Disciplinary Act ("UPODA"; 50 ILCS 725/1, *et seq*.) telling. There was no public

---

[1] Hereafter referred to as the active "Complaint."

speech here, nor a retaliatory act, and so for the reasons further argued below and in their underlying Motion, Defendants are entitled to dismissal.

## Argument

A. <u>Miller has not identified retaliation for speaking on a matter of public concern</u>.

Miller's argument concerning his First Amendment claim centers on an interpretation of his Complaint which understands averments about Miller's motives and job duties (at Complaint, Count I, ¶¶ 16-17) as sufficient to confirm that he was speaking as a private citizen. Both paragraphs are addressed in Defendants' Motion (<u>see</u> *Mtn*., at p. 2 and 4); neither is the magic bullet Miller hopes.

However pure Miller would characterize his own purpose(s), his pleading also still makes clear that "ramifications on the department" were paramount in his decision to encourage witnesses to testify against Davenport in the Village's internal investigation. Miller takes umbrage at "Defendants' contentions [his] participation in the investigation 'was aimed at influencing its outcome' and that he was "marshalling support for a preferred resolution,'" but if those are "impermissible inferences" from a pleading which then directly references concern for the "fitness" of Davenport to lead the department, then reading the literal text of the Complaint must be impermissible. *Resp*. p. 3 <u>cf</u>. *Compl*., Ct. I, ¶ 16. It would be an odd conclusion to determine that Miller somehow had concerns for Davenport's capacity to run the Village police department as a private citizen – but had none as a member of the same department.

Regardless, Miller's parsing of *Gonzalez, supra*., bears further review. He seeks to distinguish *Gonzalez* by noting that the whistleblowing "writings" considered in that case were "a routine requirement of the job," whereas Miller was not a formal participant (at least in the sense of being an investigator) in the Davenport investigation here. *Resp*. p. 2. And he directs the Court to *Delgado v. Jones*, 282 F.3d 511 (7th Cir. 2002) (a qualified immunity case) as purportedly more analogous – with

the plaintiff in Delgado including additional facts questioning his department's ability to conduct an objective investigation in a submitted report.

But it would be an strange outcome to state that whether Miller's speech was of public concern turned on whether he was a lead detective in an internal investigation or merely a witness and encourager of other witnesses. In *Delgado*, the author of the report in question was challenging the fairness of the very review being undertaken by including details questioning his department's ability to conduct a proper investigation. Here, Miller was not uniquely bringing the subject of allegations to the Village's attention – the Village was already aware of accusations against Davenport: that's why an internal investigation was occurring. Nor was Miller trying to give voice to concern that the Village could not fairly conduct that investigation; to the contrary, his pleading indicates he prompted witnesses' participation in it.

The logical conclusion is that Miller was advocating for a particular result—one which might have displaced a rival in a position Miller's own Complaint indicates he coveted—and was disappointed that was not the decision the Village reached. His testimony and/or encouragement of others testimony does not become a matter of public concern simply because a significant result was within the realm of possible outcomes when the Village considered that evidence.

Miller also expresses surprise that Defendants would challenge whether a retaliatory act occurred. See *Resp*. p. 4 ("It is difficult to understand how Defendants could suggest termination was not imminent.") But the logic is straightforward: Miller contends that an alleged threat to fire him after a surprise round of questioning was counter to UPODA; he then ignores that if true, he would presumably be in position to raise procedural objections based thereon. Put another way, Miller's own pleading tells the Court that a firing could not have been properly imminent because he was entitled to raise UPODA in his defense – yet he chose not to do so. There was no attempt to work

out differences with his employer, or assess the seriousness of a single conversation – there was only an immediate reaction to resign and level this suit.

The consequences of sanctioning that approach would be the creation of the "super-personnel department" the Seventh Circuit sought to avoid in *Debs v. Northeastern Illinois University*, 153 F.3d 390, 396 (7th Cir. 1998). See *Mtn.*, p. 5. Miller was not fired. He was not demoted. Put simply, no adverse act was taken. He was at worst, challenged over his job performance – and asks this Court to provide him a cause of action because he responded with indignation.

Yet, a long line of case law expounds on the idea that adverse actions are not trivial in nature. See, e.g. *Maclin v. SBC Ameritech*, 520 F.3d 781, 789 (7th Cir. 2008) (change in title insufficient); *Sawyer v. Nicholson*, 2010 U.S. Dist. LEXIS 115969 (N.D. Ill. 2010), ciing *Hill v. Am. Gen. Fin. Inc.*, 218 F.3d 639, 645 (7th Cir. 2000) ("Not everything that makes an employee unhappy is … actionable"); *Hernreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (dirty look not enough), and *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996) (must materially alter the terms and conditions of employment). And if poor performance reviews alone are not an adverse action, neither can they be a constructive discharge. See *Smart v. Ball State Univ.*, 89 F.3d 437, 441-442 (7th Cir. 1996) and *Silk v. City of Chicago*, 194 F.3d 788, 802 (7th Cir. 1999).

Defendants are entitled to dismissal of Count I, with prejudice.

B. <u>Miller has not identified a plausible constructive discharge claim</u>.

Miller's defense of his Count II retaliatory discharge claim similarly highlights its own weaknesses. Attempting to excuse the lengthy delay between the event spurring purported animus relevant to Count II, and alleged retribution, Miller argues that Block "had no opportunity to retaliate against Miller for the DUI arrest until he became [Village] President in April 2017." *Resp.* p. 5. But what follows is not a story about how Block immediately punished Miller when presented

with that supposed long-awaited first chance. Instead, Miller's employment with the Village continued without issue for another eight (8) months.

Disregarding that problem, Miller asks the Court to treat Block's promotion of Davenport as a somehow retaliatory building block in a lengthier plan—while gratuitously mentioning that Miller apparently wanted access to the same opportunity and was longer-tenured. Yet, there is no entitlement to lockstep appointment to policymaking positions within the top brass of governmental units, and Miller wisely makes no argument to the contrary. Cf., e.g. *Americanos v. Carter*, 74 F.3d 138 (7th Cir. 1998) and *Opp v. Office of the State's Attorney of Cook County*, 630 F.3d 616 (7th Cir. 2010).

The decision to appoint Davenport as Chief of Police is thus not "evidence of retaliatory animus" (*Resp*. p. 5) no matter how Miller's briefing massages it, because Miller had no inherent right to pick the Village's Chief of Police. Similarly innocuous is the accusation that Block (or for that matter, an attorney) was/were in attendance when Davenport later questioned Miller about his job performance, as if the physical number of bodies in the room changes the analysis. See *Resp*. pp. 4 ("important to note") and 5 ("chooses to attend"). If there is some legal obligation for a Village President not to take an interest in the operation of the Village's police department or obtain the advice of counsel while doing so, it is lost on Defendants.

The result is that Miller's conclusion that "conduct revealing retaliatory animus … began almost immediately after Block took office" is not actually supported or plausibly inferred from the pleadings here. *Resp*. p. 5, cf. *Compl*. Frankly, Miller's Complaint does not even identify Block as the individual who questioned his job performance; Davenport was the one who led the questioning, per Miller's pleadings – and there is no indication Davenport even knew that Miller had arrested Block six (6) years earlier or had received any directive from Block that he was prepared to follow so as to enforce Block's supposed biased views on personnel decisions.

All Miller has is a protest that he was blindsided by Davenport's criticism, a belief that it was unwarranted given his prior employment history, and an unfounded suspicion that Davenport must have therefore been a mercenary for Block hellbent on ignoring procedural protections available from UPODA. The Court need not treat that conspiracy theory as plausible under the Rule 12(b)(6) standard. But for the sake of argument, even if it was true, Miller's Response is also silent on Defendants' challenge to his failure to assert supposed rights under UPODA.

Defendants' Motion points out that the Seventh Circuit has previously found where an employee who quits without giving an employer a reasonable chance to work out a problem, he has not been constructively discharged. See *Mtn.*, p. 7, citing *Grube v. Lau Industries, Inc.*, 257 F.3d 723 (7th Cir. 2001). Miller's Response cites **no** case law in the section of its argument concerning Count II to rebut this dispositive observation.

Consequently, Defendants respectfully reassert that Count II should be dismissed, with prejudice.

**Conclusion**

Disagreements about the quality of an employee's work do not become actionable federal cases simply because an employee distrusts the motives of his employer. In this case, Miller was confronted with criticism he felt was unfair and resigned rather than challenging the feedback he was receiving. That forecloses any claim that the Village itself affirmatively took any retaliatory action against him, and in conjunction with the failures to identify protected speech, should lead this Court to dismiss his Complaint for failing to state a claim upon which relief can be granted.

WHEREFORE, Defendants, the VILLAGE OF KIRKLAND, RYAN BLOCK, and ADAM DAVENPORT, respectfully request this Honorable Court dismiss Plaintiff's Complaint herein with prejudice, and in so doing further order any and all such other relief as is just and proper.

                              Respectfully submitted,
                              The VILLAGE OF KIRKLAND, RYAN BLOCK,
                              and ADAM DAVENPORT

               By:     _/s/_ *K. Austin Zimmer*
                              K. Austin Zimmer
                              *One of their attorneys*

K. Austin Zimmer (#6276227)
Timothy A.M. Woerner
DEL GALDO LAW GROUP, LLC.
1441 S. Harlem Ave.,
Berwyn, Illinois 60402
*Attorneys for the Defendants*
(708) 222.7000 (t) | (708) 222.7001 (f)
zimmer@dlglawgroup.com