UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ANTHONY MILLER, )<br>       Plaintiff, )<br>   v. )<br> )<br>VILLAGE OF KIRLAND, an Illinois )<br>municipal corporation; RYAN BLOCK, )<br>individually and in his official capacity; and )<br>ADAM DAVENPORT; individually and in )<br>his official capacity, )<br>       Defendants. ) | Case No. 3:19 CV 50004<br><br>Judge John Robert Blakey |

# MEMORANDUM OPINION AND ORDER

Plaintiff Miller's Second Amended Complaint ("SAC") alleges: (1) Defendants Ryan Block ("Block") and Adam Davenport ("Davenport") took retaliatory actions against Plaintiff in violation of the First Amendment; (2) Defendant Village of Kirkland ("Kirkland") violated state law by discharging Plaintiff for retaliatory reasons; and (3) that Village of Kirkland must indemnify him for the allegations contained in Count I. Defendants subsequently filed this motion to dismiss. [24]. Plaintiff sufficiently alleges facts to proceed at this stage, except as to his indemnification claim. Defendants' motion to dismiss is therefore denied in part and granted in part.

I. **Background**

A. **Plaintiff's Involvement in the Davenport Investigation**

Plaintiff worked as a Kirkland police officer between June 15, 2005 and January 3, 2018. [23] ¶¶ 8, 21, 27. During this time, Plaintiff alleges that he always

1

met police officer expectations and consistently performed his duties in an excellent manner. *Id.* ¶¶ 9–10. Plaintiff never received any type of discipline during the course of his career. *Id.* ¶ 11.

As relevant here, voters elected Defendant Block as Village President of Kirkland on April 4, 2017. *Id.* ¶ 12. Shortly thereafter, Block appointed Defendant Davenport to be the Kirkland Chief of Police. *Id.* ¶ 13. The Village Board subsequently approved Davenport's appointment. *Id.*

In November of 2017, Kirkland officials began investigating allegations that Davenport engaged in inappropriate sexual conduct with a female police officer. *Id.* ¶ 14. As part of that investigation, Plaintiff reported incriminating information but alleges his involvement in the investigation remained as a concerned citizen and was not part of his official duties as an officer. *Id.* ¶¶ 15–16 (alleging Plaintiff reported information "because of his concern as a citizen about the character and fitness of the newly appointed Chief of Police and its negative ramifications on the department"). In other words, Plaintiff alleges his normal police duties and responsibilities did not obligate him to participate in the investigation. *Id.* Plaintiff also appeared before the investigators and provided information corroborating other evidence of Davenport's inappropriate conduct. *Id.* ¶ 17. The department's administration allegedly viewed Plaintiff as supportive of other department members who willingly shared evidence regarding Davenport's alleged misconduct. *Id.* ¶ 18.

In what Plaintiff believed to be retaliation for his role in the Davenport investigation, on January 3, 2018, Plaintiff received orders to attend a meeting with

Block, Davenport, and an attorney. *Id.* ¶¶ 19–20. In this meeting, the attorney accused Plaintiff of various incidents of misconduct and questioned Plaintiff about them. *Id.* ¶ 21. Among other things, the attorney accused Plaintiff of convincing an individual (the husband of the police officer to which Davenport allegedly acted inappropriately) to report what he knew about the alleged misconduct. *Id.* ¶ 23. Plaintiff denied any wrongdoing on his part and explained the factual basis for his denial. *Id.* ¶ 24. In spite of Plaintiff's denials and an alleged lack of credible evidence, Davenport, Block, and the attorney presented Plaintiff with the option of resigning in lieu of being terminated. *Id.* ¶ 25. Plaintiff further alleges Defendants failed to provide him with any of the rights guaranteed in the Uniform Peace Officer's Disciplinary Act, 50 Ill. Comp. Stat. 725.1 *et seq.* ("UDOPA"), either prior to or during this meeting. *Id.* ¶ 26. Fearing that termination might make it impossible for him to secure law enforcement future employment, Plaintiff resigned. *Id.* ¶ 27.

    **B.    Plaintiff's Interactions with Defendant Block**

The incidents laid out above were not Plaintiff's first interaction with Defendant Block. On November 29, 2012, prior to Block's election as Village President, Plaintiff arrested Block for driving under the influence of alcohol. *Id.* ¶¶ 14, 17. Block subsequently entered a guilty plea and received a sentence of court supervision. *Id.* ¶ 17. Plaintiff alleges that Block remained upset with Plaintiff for Plaintiff's decision to arrest him in light of how close the stop was to Block's home. *Id.* ¶ 16. Plaintiff and Block had no other significant interaction from the time that Plaintiff arrested Block to Block's election as Kirkland Village President. *Id.* ¶ 18.

3

Soon after his election, though, Plaintiff alleges Block took a series of actions that showed his hostility towards Plaintiff. First, Block terminated Kirkland's previous Chief of Police. *Id.* ¶ 19. Block subsequently appointed Davenport to serve as the new Chief of Police even though at that point Davenport only had one year of full-time police officer experience. *Id.* ¶ 20. Importantly, Block did not consider Plaintiff for the position despite his allegedly superior qualifications and 12 years of distinguished service. *Id.* ¶ 21. Moreover, Plaintiff alleges that from May 2017 through January 3, 2018, Block impeded Plaintiff's promotion to Sergeant, notwithstanding Plaintiff's qualifications, relevant certifications, and successful performance of his police officer duties. *Id.* ¶ 22. Finally, on January 3, 2018, Block took part in the meeting described above that resulted in Plaintiff's forced resignation. *Id.* ¶¶ 23–24.

## II. **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer

possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *Iqbal*, 556 U.S. at 678.

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id*. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### III. <u>Analysis</u>

#### A.  Plaintiff's First Amendment Claim

Plaintiff's seeks to hold Defendants Davenport and Block liable for retaliation in violation of the First Amendment. [23] Count I. Public employees successfully state a claim for a retaliation in violation of the First Amendment by alleging their constitutionally protected speech constituted a motivating factor in a retaliatory action. *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017); *Hutchins v. Clarke*, 661 F.3d 947, 955 (7th Cir. 2011). Public employee speech is only constitutionally protected, however, when the speech is: (1) on a matter of public concern and (2) made as a private citizen. *Forgue*, 873 F.3d at 966.

*1. Private Speech*

Defendants first argue that Plaintiff did not speak as a private citizen but rather as part of his job as a police officer. [24] at 4. They rely upon *Gonzalez v. City of Chicago*, 239 F.3d 939 (7th Cir. 2001), claiming that even though Plaintiff did not have a specific role in the investigation of Davenport, he had a duty as a police officer

5

to report misconduct. [24] at 4. Therefore, they argue, because of Plaintiff's duty to report misconduct, he acted as a public employee, not a private citizen. *Id*. Plaintiff counters that his case is distinguishable from *Gonzales*. [27] at 2. Whereas Gonzales wrote investigative reports—the content of which formed the basis of his retaliation claim—as part of a routine requirement of his job, Plaintiff did not have any official investigative role, and he spoke as a voluntary witness outside his official police officer duties and responsibilities. *Id*. at 3; [23] ¶¶ 15–16.

At this stage of the proceedings, Plaintiff plausibly alleges he spoke as a private citizen. A public employee only speaks as an employee when he speaks pursuant to his assigned duties. *Davis v. City of Chicago*, 889 F.3d 842, 845 (7th Cir. 2018); *Delgado v. Jones*, 282 F.3d 511, 519 (7th Cir. 2002) ("Our holding in *Gonzalez* is limited to routine discharge of assigned functions, where there is no suggestion of public motivation."). Indeed, as *Gonzalez* explicitly recognized, even speech related to an officer's job responsibilities may become private speech if the officer acts "beyond his employment capacity." 239 F.3d at 941 (explaining that an officer maintains a First Amendment right to expose police cover-ups should his supervisors force him to rewrite reports so as not to disclose police misconduct, but he does not enjoy First Amendment rights in investigative reports written as part of his job).

As relevant here, Plaintiff alleges he "did not have any role in the investigation in his capacity as an officer," nor did participating in the investigation constitute "a part of his normal duties and responsibilities." [23] ¶ 15. At best, Plaintiff had a general obligation to report official police misconduct, *Forgue*, 873 F.3d at 967, but

Plaintiff's specific participation in the investigation and his encouragement of others to come forward plausibly goes beyond this general duty to report or his assigned work functions, [30] ¶¶ 15–18; *Delgado*, 282 F.3d at 519 (holding that while a detective's job might have obligated him to report information about violations of the city ordinances to the Chief of Police, the particular communication was "designed not only to convey information of possible crimes, but also *additional facts* that were relevant to the manner and scope of any subsequent investigation") (emphasis in original).

Defendants counter that Plaintiff's argument fails because it would be a "strange outcome" to find that whether Plaintiff's speech "was of public concern turned on whether he was a lead detective in an internal investigation or merely a witness." [28] at 3. But this outcome is not strange at all given that the central question at issue is whether the employee's speech is characterized as part of his or her "ordinary job responsibilities." *Gonzalez*, 239 F.3d at 941; *see also Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (analyzing the question of whether a public employee's speech is protected based upon whether the employee spoke in the course of his employment or for some other reason); *Delgado*, 282 F.3d at 519–20 (same). When a public employee steps outside of his assigned duties and ordinary job functions, and instead chooses to speak about a matter of public concern, the First Amendment protects his speech.

### 2. *A Matter of Public Concern*

Defendants next argue that Plaintiff did not speak on a matter of public concern but rather his on a matter of personal interest in the outcome of the investigation. [24] at 4–5. In response, Plaintiff argues that his concern as a citizen about the character and fitness of the Chief of Police, rather than the motivations ascribed by Defendants, motivated him. [27] at 2; [23] ¶ 16.

Whether a public employee's speech addresses a matter of public concern depends upon the content, form, and context of the speech. *Gustafson v. Jones*, 290 F.3d 895, 906–07 (7th Cir. 2002). Of the three, content is the most important. *Id.* at 907. Speech addresses a matter of public concern if the speech can fairly be said to relate to a matter of political, social, or other concern to the community. *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Speech intended to serve only (or primarily) a private or personal interest fails to constitute protected speech, even when it tangentially addresses an issue of public importance. *Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999); *Gustafson*, 290 F.3d at 908 ("We emphasize the word 'only' because, while speech that is only motivated by private concerns may not be protected, a personal aspect contained within the motive of the speaker does not necessarily remove the speech from the scope of public concern.") (internal punctuation and quotation marks omitted).

Here, Plaintiff's speech addressed the newly appointed Chief of Police's alleged misconduct. [23] ¶¶ 16–17. As the Seventh Circuit noted, "police misconduct is certainly a matter of public concern." *Gonzales*, 239 F.3d at 942. Defendants'

arguments that Plaintiff's motivations transform this speech on an issue of public importance into unprotected speech are not persuasive. Plaintiff clearly alleges that he gave testimony about Davenport's misconduct "because of his concern as a citizen about the character and fitness of the newly appointed Chief of Police and its negative ramifications on the department." [23] ¶ 16. While Defendants may read a more cynical and self-interested motive into Plaintiff's actions, this Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor at this stage of the case. *Iqbal*, 556 U.S. at 678. Moreover, as noted above, the mere fact that Plaintiff's private concerns may have motivated him as well does not in itself transform the speech into a matter of private concern. *Gustafson*, 290 F.3d at 908. Therefore, this Court finds Plaintiff sufficiently alleges he spoke on a matter of public concern.

### 3. Retaliation

Finally, Defendants argue that Plaintiff fails to sufficiently allege retaliation. [24] at 4–5. To state a retaliation claim, Plaintiff must plausibly allege that Defendants retaliated against him *because* of his constitutionally protected speech. *Cunningham v. Vill. of Mount Prospect*, No. 02 C 4169, 2002 WL 31628208, at *3 (N.D. Ill. Nov. 19, 2002) (citing *Button v. Kibby-Brown*, 146 F.3d 526, 529 (7th Cir. 1998)). Defendants claim Plaintiff does not meet this bar because he does not sufficiently allege a nexus between his speech regarding the Davenport investigation and any adverse employment action. [24] at 4–5.

i. <u>Motivating Factor</u>

When viewed in the light most favorable to the Plaintiff, the SAC plausibly alleges retaliatory motive. Plaintiff alleges that only two months after his participation in the Davenport investigation, Defendants abruptly called him in to a meeting with no notice and without affording him any of the protections guaranteed for an interrogation under the UDOPA. [23] ¶¶ 19–27. At that meeting, Plaintiff alleges Defendants accused him of various types of misconduct, of which Defendants offered no proof to support their accusations. *Id.* ¶ 25. Plaintiff further alleges that after Defendants baselessly attacked him, they then essentially forced him to leave his job by offering him the option of resigning in lieu of termination. *Id.* Because of the short time period between Plaintiff's participation in the Block investigation and this meeting, as well as aggressive actions Defendants allegedly took in the meeting, these allegations suffice to draw an inference that Defendants were at least partially motivated by Plaintiff's protected speech. *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006) (noting that for courts to consider retaliation to be a motivating factor, retaliation need not be the but-for or only factor, retaliation just needs to be a factor in the defendant's actions); *Culver v. Gorman & Co.*, 416 F.3d 540, 545–46 (7th Cir. 2005) (explaining that courts may draw inferences based upon circumstantial evidence of retaliatory termination).

ii. <u>Retaliatory Action</u>

Defendants' finally argue that they did not take any retaliatory action as Plaintiff resigned and he does not allege that "termination was otherwise imminent."

10

[24] at 5. While Defendants correctly recognize that Plaintiff must allege that the retaliation resulted in an actual adverse employment action, *Silk v. City of Chicago*, 194 F.3d 788, 802–03 (7th Cir. 1999), they incorrectly argue that Plaintiff fails to do so simply because Kirkland did not technically terminate him.

In considering what actions amount to an adverse employment action, the Seventh Circuit takes a broad view and considers any deprivation likely to deter the exercise of free speech an adverse employment action. *Spiegla v. Hull*, 371 F.3d 928, 941 (7th Cir. 2004). Plaintiff alleges that Defendants interviewed him without providing his statutorily guaranteed rights. [23] ¶ 26. He also alleges Defendants Block, Davenport, and an attorney instructed him to resign or be terminated. *Id.* ¶ 25. Plaintiff felt he had to resign because he could not risk the chance that termination would prevent him from finding future law enforcement employment. *Id.* ¶ 27. Being stripped of his statutory rights and placed in a situation where he feared obtaining future employment, Plaintiff plausibly alleges adverse actions that would deter him (and likely others in the police department) from exercising free speech. Thus, given the alleged forced-resignation, Plaintiff plausibly alleges retaliatory actions.

In sum, for the reasons outlined above, this Court finds plausible Plaintiff's claim for retaliation in violation of the First Amendment, and, thus, denies Defendants' motion to dismiss Count I.

## B. Plaintiff's State Law Retaliatory Discharge Claim

In addition to constitutional violations, Plaintiff also asserts a state-law claim for retaliatory discharge against Defendant Village of Kirkland. [23] Count II. Plaintiff alleges the Village of Kirkland, through Defendant Block, wrongfully discharged him in retaliation against Plaintiff because he previously arrested Block for a DUI. *Id*. ¶¶ 14–34. Plaintiff alleges the following facts to suggest Block exhibited animus towards him: Block failed to consider Plaintiff for the vacant Chief of Police position, impeded Plaintiff's promotion to Sergeant, and participated in the meeting where Plaintiff alleges Defendants denied him his UPODA's rights and forced him to resign. [23] ¶¶ 14–34.

In Illinois, courts recognize the tort of retaliatory discharge. *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009). To state a claim, Plaintiff must allege: "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Id*. Defendants first argue that Plaintiff's claim fails because too much time passed between Plaintiff's arrest of Block and Plaintiff's forced resignation to infer a relationship between the events. [24] at 6. While Defendants point to *Andrekus* for the proposition that a sufficient passage of time may destroy an inference of causation, the same case indicates that gaps in time are not necessarily problematic if they can be explained. *Andrekus v. Bd. of Educ. of Dist. U-46*, No. 02 C 9360, 2004 WL 2535274 (N.D. Ill. Sept. 28, 2004). Here the gap in time between Block's arrest and the alleged retaliatory acts is plausibly explained by the fact that Block was not yet in a position

to retaliate. Once Block became Village President, Plaintiff adequately alleges a series of plausibly retaliatory actions, culminating in Plaintiff's forced resignation. [23] ¶¶ 19–31.

Next, Defendants characterize Plaintiff's destructive discharge claim as a claim about whether they denied him his UPODA rights. [24] at 6–7. This argument is a red herring because the question of whether Defendants denied Plaintiff his UDOPA rights does not impact the relevant inquiry—whether the Village wrongfully discharged Plaintiff for retaliatory reasons in violation of public policy. Plaintiff does not offer the UDOPA allegations to show constructive discharge, but rather to support the inference of retaliatory motive. Furthermore, despite Defendants' attempts to claim the UPODA did not apply to the meeting, the allegations contained in the SAC plausibly assert that the meeting was a "formal investigation" under the statute because Plaintiff alleges Defendants intended to gather evidence of misconduct in order to remove or suspend him. 50 ILL. COMP. STAT. 725/2(c) (2013); [23] ¶¶ 23–39; *see also* [27] at 5.

As to the remaining factors, Defendants hang their hat on the fact that Plaintiff resigned instead of being formally terminated, so Plaintiff fails to allege the discharge element. [24] at 7. Illinois courts, however, have held that the tort applies to situations where an employee "is forced to resign under express or implied threat of discharge." *Hinthorn v. Roland's of Bloomington, Inc.*, 503 N.E.2d 1128, 1130 (Ill. App. Ct. 1987). Here, Plaintiff alleges that Defendants explicitly forced him to resign by threatening his termination if he did not, possibly affecting his ability to obtain

13

future law enforcement employment. [23] ¶¶ 28–30. As to the public policy element, Illinois courts have also ruled that public policy "favors the exposure of crime." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 880 (Ill. 1981). This principle extends to the public's interest in ensuring police officers can properly perform their duties. *Nickum v. Vill. of Saybrook*, 972 F. Supp. 1160, 1172–73 (C.D. Ill. 1997). Plaintiff's arrest of Defendant Block for DUI falls under that umbrella.

For these reasons, Plaintiff sufficiently alleges a claim for retaliatory discharge under Illinois law. Accordingly, this Court denies Defendants' motion to dismiss Count II.

### C. Plaintiff's Indemnification Claim

Finally, Defendants argue that Plaintiff's indemnification claim should be dismissed because it rests upon the validity of Plaintiff's First Amendment Claim. [24] at 6–7. As discussed above, Plaintiff has sufficiently alleged a claim for retaliation in violation of the First Amendment. Therefore, Defendants' argument regarding the indemnification claim also fails. This Court notes, however, that Illinois law does not recognize indemnification as an independent cause of action but rather a statutory mandate directing local public entities to pay meritorious plaintiffs in certain situations. *Cunningham*, 2002 WL 31628208, at *8; 745 ILL. COMP. STAT. 10/9-202 (2002). If Plaintiff ultimately prevails and the statute applies, Plaintiff may certainly rely upon it in seeking indemnification from Defendant Village of Kirkland. But to the extent Plaintiff asserts 745 ILL. COMP. STAT. 10/9-202 as its own cause of action, Defendants' motion to dismiss is granted.

14

## IV. **Conclusion**

For the foregoing reasons, this Court denies in part and grants in part Defendants' Motion to Dismiss the Second Amended Complaint. [24]. This Court denies Defendants' motions to dismiss Counts I and II and grants Defendants' motion to dismiss Count III to the extent Plaintiff asserts Count III as its own cause of action.

This Court sets a case management conference for 1:00 p.m., on Friday, March 13, 2020, at which point the parties shall be prepared to set all case management dates.

Dated: February 18, 2020

Entered:

_John Robert Blakey_
United States District Judge
